1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

TOKI S. KNAPP,

                        Plaintiff,

        v.

CAROLYN W. COLVIN. Commissioner of
Social Security, [1]

                        Defendant.

Case No. 3:12-cv-05442-RJB-KLS

REPORT AND RECOMMENDATION

Noted for June 7, 2013

13
14
15
16
17
18
19
20
21
22

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be affirmed.

23

FACTUAL AND PROCEDURAL HISTORY

24

        On September 23, 2008, plaintiff filed an application for disability insurance benefits,

25
26

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

REPORT AND RECOMMENDATION - 1

and on September 26, 2008, he filed another one for SSI benefits, alleging in both applications that he became disabled beginning April 10, 2002, because of neck, shoulder and hip pain due to osteoarthritis, calcium build-up and multiple compound fractures in his left leg and pain in his left knee and left leg. <u>See</u> Administrative Record ("AR") 15, 142, 145, 162.  Both applications were denied upon initial administrative review on November 29, 2008, and on reconsideration on May 11, 2009. <u>See</u> AR 15, 76, 79, 86, 91.  A hearing was held before an administrative law judge ("ALJ") on June 4, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 30-71.

In a decision dated July 22, 2010, the ALJ determined plaintiff to be not disabled. <u>See</u> AR 15-24.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 21, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). <u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981, § 416.1481. On May 18, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. <u>See</u> ECF #1.  The administrative record was filed with the Court on July 24, 2012. <u>See</u> ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for correction of the ALJ's errors in: (1) failing to properly consider the limiting effects of plaintiff's hidradenitis suppurativa; (2) improperly relying on the opinion of a non-acceptable medical source in assessing plaintiff's sitting limitations; and (3) improperly rejecting the opinions of Lauren Crowley, M.D., and Lauren Thronson, M.D.  For the reasons set forth below, however, the undersigned disagrees the ALJ so erred and therefore recommends the Commissioner's final decision be affirmed.

REPORT AND RECOMMENDATION - 2

DISCUSSION

A determination by the Commissioner that a claimant is not disabled must be upheld by the Court if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." Batson v.

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's following findings regarding the opinions of Dr. Crowley

and Dr Thronson:

> A provider from Harborview Medical Center, L. Thronson, MD, completed a
> form in connection with the claimant's receipt of state public assistance on
> July 20, 2009 regarding the claimant's medical condition (9F-46).  Dr.
> Thronson stated the claimant could not do heavy lifting, prolonged
> sitting/standing, walking, squatting, and bending without pain (9F-46).  Also,
> it was noted that his activities of daily living were severely restricted.  It was
> opined that he would be able to work for less than ten hours per week.
> Another provider, Lauren Crowley, MD, completed a form regarding the
> claimant's medical status on October 22, 2008 (10F).  It was noted that the
> claimant had difficulties performing activities of daily living and needed help
> from his wife who was his caregiver.  Dr. Crowley stated the claimant could
> not lift more than five pounds, could not stand or sit for long periods of time,

REPORT AND RECOMMENDATION - 5

and that repetitive motions aggravated his pain.  It was opined that the
claimant was unable to participate in any work activities or activities related to
preparation and looking for work.  These opinions are given little weight as
they are not consistent with the objective medical evidence.  The opinions
expressed are conclusory in nature, providing very little explanation of the
evidence relied on in forming that opinion.  The objective findings as
discussed above are not of sufficient severity to support the extent of the
limitations opined.

AR 21.  Specifically, plaintiff argues these reasons for rejecting the opinions of Dr. Crowley and

Dr. Thronson are not supported because the "[o]bjective medical evidence abounds in this case."

ECF #11, p. 5.[3]  In support of this argument, plaintiff points to clinical findings indicating the

presence of skin lesions in sensitive body areas and osteoarthritis and loss of range of motion in

his right hip. See id. at pp. 5-6 (citing 263, 371, 393, 423).  But evidence merely establishing the

existence of an impairment or symptoms related thereto is an insufficient basis for establishing

disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

In addition, some of the evidence plaintiff relies on here – loss of range of hip motion –

comes from Paul B. Nutter, M.D., who examined plaintiff in mid-January 2009, but who opined

that he was capable of performing at the sedentary-to-light work level. See AR 371-72.  Plaintiff

argues the ALJ did not sufficiently explain why he preferred the opinion of Dr. Nutter over that

of Drs. Crowley and Thornton.  But the ALJ specifically noted the lack of supporting clinical

findings in the latter physicians' opinions, while Dr. Nutter provided a detailed summary of his

own findings to support his functional assessment. See AR 21-22.  Accordingly, the ALJ was not

remiss in finding the objective medical evidence supported Dr. Nutter's assessment rather than

the conclusory ones offered by Dr. Crowley and Dr. Thronson, which provided little in the way

of clinical explanation therefor.

---

[3] Plaintiff also points out that the ALJ himself found he needed a cane to ambulate. See AR 19.  But this restriction
alone does not show plaintiff has the level of disabling limitation found by Dr. Crowley and Dr. Thronson, nor is it
inconsistent with the limitation to performing less than the full range of light work assessed by the ALJ. See id.

REPORT AND RECOMMENDATION - 6

Plaintiff goes on to argue that the treatment notes Drs. Crowley and Thornton provided supports their opinions that he cannot work.  Again, though, there is little if any indication in the objective findings section of the treatment notes of either physician that plaintiff possessed the type of functional limitations they noted in those opinions. See AR 291-92, 296-97, 303, 375, 380, 393.  The fact that Dr. Thronson may have "understood" that plaintiff "had a care provider," prescribed marijuana for his pain or referred him to a pain clinic, furthermore, merely shows she understood such to be the case and felt he needed some form of treatment. ECF #13, p. 5 (citing AR 377, 411, 413).  And, once more, that fact does not in any way establish the existence of work-related functional limitations.  The same is true in regard to any notations of chronic pain Dr. Crowley made. See id. (citing AR 427).  Lastly, plaintiff's assertion that Dr. Thronson reported his weight gain contributed to the functional limitations she assessed is not accurate, as she merely stated it was contributing to his lack of activity. See AR 381.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform less than the full range of light work. See AR 19.  Plaintiff argues that even though the ALJ found his hidradenitis suppurativa was a "severe" medically determinable impairment that resulted in "significant vocational limitations" at step two of the sequential disability evaluation process (AR 18), he did not include any actual functional limitations stemming therefrom in his RFC assessment.  It is true that "[w]here the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, 'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'" Hill v. Astrue, 688 F.3d 1144, 1151 (9th Cir. 2012) (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing 42 U.S.C. § 423(d)(2)(B)).  This the ALJ did, not only in regard to plaintiff's hidradenitis suppurativa, but to the other medically determinable impairments he found as well. See AR 19-22.

While plaintiff protests the lack of functional limitations stemming from that condition adopted by the ALJ, he has not met his burden of showing the record actually demonstrates the existence of such limitations. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (claimant has burden of proof on steps one through four of the sequential disability evaluation

REPORT AND RECOMMENDATION - 8

process).  Plaintiff asserts that medical examinations establish the existence of skin lesions and he has complained of pain resulting therefrom when sitting.  But as discussed above, the mere existence of a condition is not sufficient to demonstrate a finding of disability.  In addition, the ALJ was not required to take plaintiff's complaints of pain at face value, given the fact that the ALJ found him to be not fully credible, a finding plaintiff has not challenged.

The undersigned further rejects plaintiff's assertion that the ALJ's statement that his skin condition resulted in "significant vocational limitations" at step two, necessarily requires that he adopt such limitations in assessing plaintiff's RFC.  The determination the ALJ makes at step two is merely a *de minimis* screening device used to dispose of groundless claims.  See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  It serves a wholly different purpose, therefore, than the more detailed findings required by the ALJ in determining the claimant's RFC at steps four and five.  See 1996 WL 374184 *4 (noting that "the limitations identified [at step two] are not an RFC assessment but are used to rate the severity of mental impairment(s) at [that step]," and that "[t]he mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment").  That is, when an impairment is found to significantly impact a claimant's ability to perform work activities at step two, that finding merely serves to allow the claimant to continue in the sequential disability evaluation process.  Such a finding thus is not intended to indicate the much more specific level of limitation that is required of the residual functional capacity assessment at step 4 and step 5, but rather simply serves to get the claimant there.  See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1228-29.[4]

---

[4] In Bray the Ninth Circuit rejected a similar argument by the plaintiff in that case, noting that while she argued that "a severe impairment, by definition, inhibits a claimant from engaging in 'basic work activities,' and the ALJ's statement of her RFC does not capture that limitation," she offered "no authority to support the proposition that a severe mental impairment *must* correspond to limitations on a claimant's ability to perform basic work activities" in the claimant's RFC assessment. Id. (emphasis added).

REPORT AND RECOMMENDATION - 9

Plaintiff further argues the ALJ erred in relying on the opinion of Kathleen Backous, a non-acceptable medical source to support the sitting limitations he included in plaintiff's RFC assessment. See AR 22, 356-63. The undersigned agrees that to the extent the ALJ treated Ms. Backous as an acceptable medical source here – and it appears the ALJ may have done so (see AR 22 (referring to Ms. Backous as "[a] state agency medical consultant") – he erred, as there is no indication in the record that Ms. Backous is in fact such (see AR 356-63; 20 C.F.R. § 404.1513(c), § 416.913(c)). But the Court agrees with defendant that this error was harmless, as the ALJ gave "significant weight" to the opinion of Dr. Nutter, who found plaintiff to be capable of performing sedentary-to-light work.[5] AR 22; see also AR 372. Accordingly, the ALJ did not need to rely on the findings of Ms. Backous in assessing the RFC that he did here.

It is true that Dr. Nutter did not expressly address plaintiff's ability to sit by mentioning it as such. However, as just noted, Dr. Nutter found plaintiff was capable of performing sedentary-to-light work. A sedentary job is one that "involves sitting" generally "total[ing] about 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567(a), § 416.967(a); see also SSR 96-9p, 1996 WL 374185 *3. Given that the ALJ found plaintiff to be capable of sitting for a maximum of six hours in an eight-hour workday (see AR 19), the ALJ's sitting limitation is fully consistent with Dr. Nutter's restriction to sedentary-to-light work (see 20 C.F.R. § 404.1567(b), § 416.967(b) (providing that if claimant is capable of performing light work, he or she will be found capable of performing sedentary work as well, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time").

While it is true that *post hoc* rationalizations are not permitted by the Court, the ability to

---

[5] Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 10

1    sit for up to six hours in an eight-hour day is not such a rationalization, but rather constitutes a

2    "specific and legitimate" inference validly taken from the fact that the ALJ gave significant

3    weight to Dr. Nutter's functional assessment. Magallanes, 881 F.2d at 755; see also Pinto v.

4    Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on

5    a ground that the agency did not invoke in making its decision"); see also Connett v. Barnhart,

6    340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not

7    discuss).  Accordingly, plaintiff has failed to establish the existence of harmful error with regard

8    to the ALJ's residual functional capacity assessment.

9
                                            CONCLUSION

10           Because as discussed above plaintiff has failed to show the ALJ committed harmful error

11   in this case, the undersigned recommends the Court find the ALJ properly concluded plaintiff

12   was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm the

13   Commissioner's final decision.

14           Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

15   72(b), the parties shall have **fourteen (14) days** from service of this Report and

16   Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

17   objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

18   474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

19   is directed set this matter for consideration on **June 7, 2013**, as noted in the caption.

20           DATED this 21st day of May, 2013.

21

22

23

24

25

26                                          _____
                                            Karen L. Strombom
                                            United States Magistrate Judge

REPORT AND RECOMMENDATION - 11